An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVEN E. KROLL,
Appellant,
vs.
INCLINE VILLAGE GENERAL IMPROVEMENT DISTRICT A/K/A IVGID, A GOVERNMENTAL SUBDIVISION OF THE STATE OF NEVADA; BEA EPSTEIN; THEODORE J. FULLER; BRUCE SIMONIAN; CHUCK WEINBERGER; AND JOE WOLFE, INDIVIDUALLY AND AS TRUSTEES OF DEFENDANT IVGID,
Respondents.

No. 61882

FILED

NOV 10 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

### *ORDER OF AFFIRMANCE*

This is an appeal from a final district court order in a declaratory relief action.[1] Second Judicial District Court, Washoe County; David A. Hardy, Judge.

Incline Village General Improvement District (IVGID) is a quasi-municipal corporation located in north Lake Tahoe. In 1965, Washoe County authorized IVGID to purchase property for public recreation. Pursuant to that authority, IVGID purchased beach property from a private developer in 1968. The beaches were purchased with the use of public bonds which were paid for by residents living within IVGID as it was constituted in 1968 (1968 IVGID). The deed transferring the

---

[1]Appellant has filed a motion requesting reconsideration of our submission of this appeal without oral argument. Having reviewed the motion, we deny it.

SUPREME COURT
OF
NEVADA

(O) 1947A

14-36978

beach property to IVGID contained a restrictive covenant limiting use of the beaches to people who owned property within the geographic boundaries of 1968 IVGID. In 1987, IVGID codified the restrictive covenant by adopting IVGID Ordinance 7, § 62. In 1995, Washoe County merged IVGID with the Crystal Bay General Improvement District (CBGID), a neighboring general improvement district.[2] Pursuant to the restrictive covenant and IVGID Ordinance 7, § 62, former CBGID residents do not have access to the IVGID beaches.

Appellant Steven Kroll owns property within the former CBGID. Because Kroll does not own property within the geographic boundaries of 1968 IVGID, he has been denied access to the IVGID beaches. Kroll filed a complaint in state district court seeking access to the IVGID beaches.[3] Kroll's second cause of action was for declaratory relief seeking a declaration that IVGID Ordinance 7, § 62 violates Nevada law. The district court granted summary judgment in IVGID's favor on all of Kroll's state law claims, including his declaratory relief claim.

Kroll now appeals the district court's order granting summary judgment in IVGID's favor on Kroll's second cause of action for declaratory relief. Kroll argues: (1) the district court erred in granting IVGID's motion for summary judgment after finding that IVGID Ordinance 7, § 62 is valid

---

[2]The merged general improvement district retained the name IVGID.

[3]There was a federal component to this case. The federal district court granted summary judgment in IVGID's favor on Kroll's federal law claims and remanded the case to state district court for resolution of Kroll's state law claims.

 

under Nevada law, and (2) the district court abused its discretion when it considered the affidavits of two IVGID witnesses in support of IVGID's motion for summary judgment.

*Standard of Review*

"This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate and 'shall be rendered forthwith' when the pleadings and other evidence on file demonstrate that no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (alteration in original) (quoting NRCP 56(c)). "This court has noted that when reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.*

This appeal also raises questions of statutory interpretation. Statutory interpretation is a question of law subject to de novo review. *In re Candelaria*, 126 Nev. ___, ___, 245 P.3d 518, 520 (2010). This court attributes the plain meaning to a statute that is not ambiguous. *Id.* An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations. *Id.*

*Kroll sets forth insufficient legal authority supporting his argument that IVGID Ordinance 7, § 62 is invalid under Nevada law*

We conclude that Kroll fails to provide this court with sufficient authority supporting his arguments that IVGID Ordinance 7, § 62 violates Nevada law. NRAP 28(a)(9)(A) requires that appellate briefs contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." If

an appellant fails to provide this court with sufficient citations to authority to support its contentions, that argument cannot prevail. *Smith v. Timm*, 96 Nev. 197, 201-02, 606 P.2d 530, 532 (1980) (stating the court was unable to find error because the appellant had failed to provide adequate legal authority).

*Kroll sets forth insufficient legal authority supporting his argument that IVGID Ordinance 7, § 62 exceeds IVGID's statutory authority*

NRS 318.050 authorizes Nevada counties to create general improvement districts (GID's). NRS Chapter 318 enumerates the powers Nevada counties can extend GID's. *See* NRS 318.077; NRS 318.143. A GID can then use bylaws to exercise authority granted to it by the county as long as the bylaws do not "conflict with the Constitution and laws of the State." NRS 318.205. Pursuant to NRS 318.143, Washoe County gave IVGID the authority to "acquire, construct, reconstruct, improve, extend and better lands, works, systems and facilities for *public recreation*." Washoe County Ordinance 97 (emphasis added).[4] Kroll argues that the phrase "public recreation" requires that the IVGID beaches be open to the general public. Kroll argues IVGID Ordinance 7, § 62 exceeds IVGID's statutory authority because it excludes the general public from using the IVGID beaches. However, Kroll cites almost no legal authority supporting his argument.

To support his argument, Kroll simply cites *In re Candelaria*, 126 Nev. at ____, 245 P.3d at 520 (holding "[i]f a statute's language is clear

_____

[4]While Washoe County Ordinance 97 uses the phrase "facilities for *public* recreation" (emphasis added), NRS 318.143(1) simply refers to "facilities for recreation."

SUPREME COURT OF NEVADA

(O) 1947A

and the meaning plain, this court will enforce the statute as written"), and the definition of "private" from a 1979 edition of *Black's Law Dictionary*. *Black's Law Dictionary* 1076 (5th ed. 1979) (defining "[p]rivate" as "[a]ffecting or belonging to private individuals, as distinct from the public generally"). It should be noted that the latest edition of *Black's Law Dictionary* does not use the phrase "public generally" when defining "[p]rivate."[5] *Black's Law Dictionary* 1389 (10th ed. 2014). We conclude that these two sources alone are insufficient to support Kroll's broad definition of the phrase "public recreation." Accordingly, because Kroll sets forth insufficient legal authority supporting his argument that IVGID Ordinance 7, § 62 exceeds IVGID's statutory authority, we conclude his argument must fail.

*Kroll sets forth insufficient legal authority supporting his argument that IVGID Ordinance 7, § 62 conflicts with Washoe County Ordinance 928*

Washoe County Ordinance 928 merged IVGID with CBGID. Ordinance 928 states:

> The surviving District as hereby created shall have all the powers and purposes of the former CBGID as provided in Ordinance No. 199 as referenced herein and all the powers and purposes of IVGID as provided in Ordinance No. 97, as amended, and . . . referenced herein.

Kroll argues IVGID Ordinance 7, § 62 conflicts with Washoe County Ordinance 928 because the county intended to give former CBGID

---

[5]The latest edition of Black's Law Dictionary defines "private" as "[o]f, relating to, or involving an individual, as opposed to the public or government." *Black's Law Dictionary* 1389 (10th ed. 2014).

residents the same rights as former IVGID residents, including beach access rights.[6]  To support his argument, Kroll simply refers to the language of Ordinance 928 itself.

However, considering the plain language of Ordinance 928 alone does not support the conclusion that Washoe County intended to invalidate IVGID Ordinance 7, § 62 and the beaches' restrictive covenant. As we previously stated, the "powers and purposes" of general improvement districts are enumerated in NRS Chapter 318. *See* NRS 318.077; NRS 318.116; NRS 318.143. We conclude that the plain language of Washoe County Ordinance 928 simply extends the governing body of the merged improvement district the same authority Washoe County previously granted IVGID and CBGID. The plain language of Ordinance 928 does not speak to individual rights of residents, and it certainly does not show an intent to invalidate IVGID Ordinance 7, § 62 and the beaches' restrictive covenant. Accordingly, because Kroll sets forth insufficient legal authority supporting his argument that IVGID Ordinance 7, § 62 conflicts with Washoe County Ordinance 928, we conclude his argument must fail.

---

[6]IVGID argues that this appeal is the first time Kroll raised the issue of Ordinance 928. However, Kroll's second amended complaint alleges a violation of NRS 318.205 which states GID bylaws cannot conflict with Nevada law; in other words, that IVGID bylaw Ordinance 7, § 62 cannot conflict with the NRS or Washoe County ordinances. Accordingly, we conclude that this court can consider Kroll's argument that IVGID Ordinance 7, § 62 conflicts with Ordinance 928.

*Kroll sets forth insufficient legal authority supporting his argument that IVGID violates Article 10, § 1 of the Nevada Constitution*

Article 10, § 1 of the Nevada Constitution provides for a "uniform and equal rate of assessment and taxation." Kroll argues IVGID Ordinance 7, § 62 violates Article 10, § 1 of the Nevada Constitution because former CBGID residents are assessed a different recreation fee than 1968 IVGID residents with beach access. To support his argument, Kroll cites other, seemingly unrelated portions of the Nevada Constitution. For example, Kroll cites Article 1, § 2 of the Nevada Constitution which provides "[a]ll political power is inherent in the people[.] Government is instituted for the protection, security and benefit of the people," but fails to coherently explain how this relates to his Article 10, § 1 uniform taxation argument. Kroll further cites Article 4, § 25 of the Nevada Constitution which provides "[t]he Legislature shall establish a system of County and Township Government which shall be uniform throughout the State," without coherently explaining how this relates to Article 10, § 1. It appears, however, that the crux of Kroll's constitutional argument is that the former CBGID residents are treated unfairly and have less of a voice than 1968 IVGID residents, which violates the Nevada Constitution.

However, Kroll fails to set forth sufficient legal authority supporting his argument that IVGID Ordinance 7, § 62 violates Article 10, § 1 of the Nevada Constitution. Kroll provides no applicable caselaw to support his argument, and the other Nevada constitutional provisions Kroll cites are not relevant to his Article 10, § 1 argument. Instead, it appears that Kroll is using Article 10, § 1 as a means to make an equal protection argument. However, Kroll's equal protection argument has already been disposed of by the federal district court in this case. Accordingly, because Kroll sets forth no applicable legal authority

SUPREME COURT
OF
NEVADA

(O) 1947A

supporting his Nevada constitutional argument, we conclude his argument must fail.

*The district court did not abuse its discretion by considering the affidavits of Gerald Eick and Ramona Cruz when granting summary judgment in IVGID's favor*

Kroll argues the district court should not have considered the affidavits of IVGID witnesses Gerald Eick and Ramona Cruz when granting summary judgment in IVGID's favor. Kroll argues the affidavits were legally insufficient under NRCP 56(e) because (1) the affiants based their testimony on a review of IVGID records and therefore lacked personal knowledge, (2) IVGID did not attach all of the documents the affiants reviewed in preparing their testimony to their affidavits, and (3) the affidavits contained statements that were technically incorrect. We disagree.

"[This court] review[s] a district court's decision to admit or exclude evidence for abuse of discretion, and will not interfere with the district court's exercise of its discretion absent a showing of palpable abuse. *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008).

*A review of relevant business records can be the basis for personal knowledge in an affidavit*

Affidavits offered in support of a motion for summary judgment must be made on personal knowledge. NRCP 56(e). A review of relevant business records can be the basis for personal knowledge in affidavits. *Vote v. United States*, 753 F. Supp. 866, 868 (D. Nev. 1990) (holding an IRS officer's review of a taxpayer's file met the "personal knowledge" requirement of FRCP 56(e)); *see also Washington Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) (holding "personal knowledge can come from review of the contents

of files and records."). Moreover, "[p]ersonal knowledge [can] be inferred from a[n] [affiant's] position." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000).

Here, Eick and Cruz had personal knowledge of the facts testified to in their affidavits because their testimony was based on a review of relevant IVGID business records. Both Eick and Cruz gave affidavit testimony describing IVGID's purchase of the beaches in 1968 and both testified that former CBGID residents have not been assessed for the purchase of or improvements to the IVGID beaches. Eick and Cruz premised their testimony on "my review of the records of IVGID."[7] We conclude that because Eick and Cruz gave affidavit testimony based on their review of IVGID business records, they had sufficient personal knowledge as required by NRCP 56(e).

*NRCP 56(e) does not require that IVGID attach every document Eick and Cruz reviewed in preparation for their affidavit testimony*

Kroll argues that NRCP 56(e) required IVGID to attach every document Eick and Cruz reviewed in preparation for their testimony to their affidavits. We disagree.

When documents are referenced in an affidavit, NRCP 56(e) commands that "[s]worn or certified copies" of the documents be attached to the affidavit. NRCP 56(e); *Daugherty v. Wabash Life Ins. Co.*, 87 Nev. 32, 38, 482 P.2d 814, 818 (1971) (holding that "[w]hen written documents

---

[7]While in federal court, IVGID filed a motion which relied on an affidavit from Cruz in which she stated she was testifying "to the best of my recollection." However, during the state court action, IVGID submitted a clarifying affidavit from Cruz in which she stated she was testifying based on her "review of the records of IVGID."

are relied on, they must be exhibited in full"). In *Daugherty*, a motion for summary judgment was filed and ultimately granted. 87 Nev. at 36, 482 P.2d at 817. The motion was supported by an affidavit which referenced a specific insurance policy that was at issue in the case. *Id* at 38, 482 P.2d at 818. However, because the moving party did not attach a copy of the insurance policy to the affidavit, this court held that the affidavit was insufficient under NRCP 56(e). *Id.*

Here, however, because the affidavits of Eick and Cruz did not reference any specific documents, there was nothing for IVGID to attach to the affidavits. Unlike in *Daugherty*, where the affiant referenced a specific insurance policy, here, Eick and Cruz simply state that from their review of IVGID records, nothing indicated that former CBGID residents were assessed for the beaches. Moreover, under NRCP 56(f), Kroll could have requested that the district court allow additional time for discovery so that Kroll could review the IVGID records on which Eick and Kroll based their testimony. *See* NRCP 56(f). Kroll failed to do so. Accordingly, we conclude that because the affidavits of Eick and Cruz do not reference any specific documents, NRCP 56(e) did not require that IVGID attach all of the records Eick and Cruz reviewed in preparation for their testimony to their affidavits.

*The statements in Eick's and Cruz's affidavits that were technically incorrect were immaterial to the district court's decision granting summary judgment in IVGID's favor*

Kroll argues that the affidavits of Eick and Cruz were legally insufficient because they contained statements that are technically incorrect. We disagree.

Summary judgment is appropriate when the evidence shows "there is no genuine issue as to any material fact and that the moving

SUPREME COURT
OF
NEVADA

(O) 1947A

party is entitled to a judgment as a matter of law." NRCP 56(c); *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005). Material facts are those which may affect the outcome of the case. *Wood*, 121 Nev. at 730, 121 P.3d at 1030.

Here, the statements in Eick and Cruz's affidavits that were technically incorrect were immaterial to the district court's decision to grant summary judgment in IVGID's favor. First, Eick's affidavit stated "at all times since IVGID purchased the IVGID Beaches, the IVGID Beaches have been used for outdoor recreation." Kroll argues that statement is technically incorrect because IVGID Policy and Procedure 136 opens the beaches' parking lots and sidewalks to the general public for free speech purposes. Kroll argues that exercising free speech is not "outdoor recreation" so Eick's statement is false. However, Kroll fails to explain how this discrepancy affects the district court's finding that IVGID Ordinance 7, § 62 is valid under Nevada law. We conclude that this discrepancy is not material because the beaches' parking lots and sidewalks being open for free speech has no bearing on the outcome of this case.

Second, both Eick's and Cruz's affidavits stated "owners of real property annexed to or merged into IVGID after 1968 have not been assessed for the purchase of or improvements to the IVGID Beaches." Kroll argues that these statements are technically incorrect because Kroll owned real property within the boundaries of 1968 IVGID from 1982-94, during which time he was assessed fees for the beaches.[8] However, it is

---

[8]In the federal portion of this case, Cruz's affidavit stated "Steven Kroll has not been assessed for the purchase of the IVGID Beaches or any
*continued on next page . . .*

undisputed that Kroll does not currently own real property within the boundaries of 1968 IVGID, nor did he own such property when CBGID merged with IVGID in 1995. Kroll does not appear to argue that he should now have beach access because he was assessed for the beaches from 1982-94; instead, Kroll simply argues that Eick's and Cruz's affidavits contain false testimony rendering them legally insufficient to support a motion for summary judgment. However, we conclude that these discrepancies are not material because it is undisputed that Kroll does not currently own property within the boundaries of 1968 IVGID, nor did he own such property when CBGID merged with IVGID in 1995. Because Kroll's former ownership of 1968 IVGID property is immaterial to the case at hand, Eick's and Cruz's affidavits were still legally sufficient despite the discrepancies.

In sum, we conclude that the affidavits of Eick and Cruz were legally sufficient under NRCP 56(e). Accordingly, the district court did not abuse its discretion by relying on the affidavits in granting summary

---

*. . . continued*

of the improvements made to the IVGID Beaches." Kroll points out that this statement is incorrect because he was assessed a fee for the beaches from 1982-94 when he owned property within 1968 IVGID. However, in the state court case, Cruz provided a clarifying affidavit in which she stated "Steven Kroll has not been assessed for the purchase of the IVGID Beaches or any of the improvements made to the IVGID Beaches as a result of his ownership of real property annexed to or merged into IVGID after 1968," which is a correct statement.

judgment in favor of IVGID.[9]  Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[9]We have considered the parties' remaining arguments and conclude they are without merit.

cc: Hon. David A. Hardy, District Judge
David Wasick, Settlement Judge
Sterling Law, LLC
Steven E. Kroll
Thorndal Armstrong Delk Balkenbush & Eisinger/Reno
Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A